In re Susan Petr HULON, Debtor.

Bankruptcy No. 387–36574–SAF–7.

United States Bankruptcy Court,
N.D. Texas,
Dallas Division.

Nov. 2, 1988.

---

2. This Memorandum shall constitute Findings of Fact and Conclusions of Law pursuant to Bankruptcy Rule 7052.

Christian P. Nielson, W. Steven Walker, Mike Wilson, Dallas, Tex., for debtor, Hulon.

Herbert L. Gilles, Dallas, Tex., for trustee, Pritchard.

## MEMORANDUM OPINION AND ORDER

STEVEN A. FELSENTHAL, Bankruptcy Judge.

On June 30, 1988, the court granted a motion filed by Gregg Pritchard, trustee in this chapter 7 case, for a bankruptcy rule 2004 examination of the debtor. The debtor's counsel of record consented to the examination. On July 7, 1988, the court entered its order requiring the debtor to submit to the examination. The debtor appeared at the scheduled 2004 examination but refused to take the oath or answer any questions. Instead she invoked the fifth amendment privilege against self-incrimination. On August 4, 1988, the trustee moved for an order holding the debtor in contempt, compelling the debtor's testimony, and granting sanctions against the debtor. On September 9, 1988, the court held a hearing on the trustee's motion. Both the trustee and the debtor were represented by counsel at this hearing.

A debtor who voluntarily petitions a bankruptcy court for a discharge of debts under Chapter 7 of the Bankruptcy Code does not forfeit her rights guaranteed by the United States Constitution. To obtain a discharge, the debtor must, among other responsibilities, attend a meeting of creditors and comply with court orders, including an order compelling her examination by a trustee under the bankruptcy rules. The court must determine whether the debtor's testimony under oath at a meeting of creditors waives her subsequent ability to invoke her fifth amendment privilege against self-incrimination and, if not, whether she properly invoked the privilege at her court-ordered 2004 examination. The court does not address the effect of invoking the fifth amendment privilege at a trustee's 2004

examination on the debtor's eligibility for a discharge of debts, that issue not being before the court on the present motion.

Under the facts and circumstances of this case, the court determines that the debtor did not waive her right to invoke the fifth amendment privilege by testifying under oath at the meeting of creditors but improperly invoked the privilege at the court-ordered 2004 examination. Her manner of invoking the privilege does not warrant a finding of contempt of court. But the trustee has incurred needless expense to the detriment of the debtor's creditors. The trustee should be compensated by the debtor for these expenses. Accordingly, the debtor must submit to a 2004 examination by the trustee within 10 days of the entry of this memorandum opinion and order. The debtor is compelled to take the oath and listen to each question propounded by the trustee before specifically invoking her fifth amendment privilege against self-incrimination (if applicable) by refusing to answer specific questions. She must also reimburse the trustee for fees and expenses totaling $1,350.00.

## I. *Facts*

On December 15, 1987, Susan Petr Hulon, the debtor, voluntarily filed for relief under Title 11, Chapter 7 of the Bankruptcy Code. Steven Walker represented the debtor as bankruptcy counsel. The debtor filed her schedules and statement of affairs on January 29, 1988.

The United States Trustee appointed Gregg Pritchard the Chapter 7 trustee to assume control of the debtor's bankruptcy estate. On February 1, 1988, the debtor submitted to an examination of creditors required by 11 U.S.C. § 341. Mr. Pritchard, as trustee, administered the oath at the meeting of creditors. The meeting of creditors was recorded by cassette tape and was transcribed. The written transcript of the § 341 meeting was provided to the court.

Approximately four months after the § 341 meeting was held, the trustee moved the court for an order requiring the debtor to submit to a Bankruptcy Rule 2004 examination. The motion also requested that

the debtor be required to produce documents relevant to her examination. Mr. Walker, bankruptcy counsel for the debtor, by certificate of conference on the motion for Rule 2004 examination, consented to the examination on behalf of the debtor. The court held a hearing and thereafter entered an order on July 7, 1988, requiring the debtor to appear before the trustee for an examination under Rule 2004 and to produce the requested documents.

On July 17, 1988, counsel for the trustee appeared and prepared to proceed with the scheduled examination. The debtor also appeared at the scheduled examination with her bankruptcy attorney, Mr. Walker, and Mike Wilson, an attorney who announced that he was representing the debtor in connection with any potential criminal investigation. When the court reporter requested that the debtor raise her right hand for the purpose of administering the oath, the debtor refused on the advice of counsel to take the oath. Instead she asserted the right to silence by invoking the fifth amendment privilege against self-incrimination. Following her testimony at her meeting of creditors, debtor learned that the Department of Justice and the Federal Bureau of Investigation had begun an investigation into her financial and personal affairs.

On August 4, 1988, the trustee moved the court for an order holding the debtor in contempt of court for violation of the 2004 examination order. The motion also requested that the court compel the debtor's testimony at a future 2004 examination. Furthermore, the motion requested that the court grant sanctions against the debtor for necessitating actions by the trustee to compel the debtor's testimony.

In order to promote the orderly and prompt administration of this case, the court inquired whether the United States Attorney would immunize the debtor's testimony in the bankruptcy case under 11 U.S.C. § 344. An attorney for the Department of Justice on behalf of the United States Attorney, declined to immunize the testimony. The court must now proceed to manage the case to promote fairness to the

parties and judicial economy. *See, In re Timbers of Inwood Forest Associates, Ltd.,* 808 F.2d 363, 373–74 (5th Cir.1987), *affirmed,* 485 U.S. ——, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988). On August 16, 1988, Mr. Walker moved the court to allow him to withdraw as counsel for the debtor because, among other reasons, actual conflicts of interests with the debtor. At a hearing on September 22, 1988, with the debtor's consent, the court granted Mr. Walker's motion to withdraw. *See,* Local District Court Rule 13.5. The debtor also represented to the court that she had obtained other bankruptcy counsel.

## II. *Nature of the Fifth Amendment Privilege*

■ The criminal justice system not only convicts the guilty, but also safeguards the accused from governmental oppression. To protect accused individuals the government must meet its burden of proof in a criminal prosecution without the forced assistance from the accused. *See, Malloy v. Hogan,* 378 U.S. 1, 7, 84 S.Ct. 1489, 1493, 12 L.Ed.2d 653 (1964). In contrast, the bankruptcy process places greater emphasis on full disclosure of an individual's financial affairs for the benefit of all creditors of the debtor's estate and thus affords the debtor only a thin shield against wide-ranging discovery. *See, generally,* Bankruptcy Rule 2004(b).

"No person ... shall be compelled in any criminal case to be a witness against himself ..." U.S. Const. Amend. V. The privilege against self-incrimination protects a person from being compelled to give testimony that might provide a link in a chain of evidence leading to that person's conviction. *See, Hoffman v. United States,* 341 U.S. 479, 486, 71 S.Ct. 814, 818, 95 L.Ed. 1118 (1951). An individual is privileged to refrain from answering any "official questions put to him in any other proceeding, civil or criminal, formal or informal, where the answers might incriminate him in future criminal proceedings." *Lefkowitz v. Turley,* 414 U.S. 70, 77, 94 S.Ct. 316, 322, 38 L.Ed.2d 274 (1973); *see also, Kastigar v. United States,* 406 U.S. 441, 92 S.Ct. 1653, 32 L.Ed.2d 212 (1972); *In re Connelly,* 59 B.R. 421, 430 (Bankr.N.D.Ill.1986).

The former Bankruptcy Act expressly conferred broad immunity on a debtor. *See,* Bankruptcy Act § 7(a)(10) (former 11 U.S.C. § 25(a)(10)). The former Bankruptcy Act provided that "[no] testimony given by [a debtor] shall be offered in evidence against [a debtor] in any criminal proceeding." *See, Glickstein v. United States,* 222 U.S. 139, 140–41, 32 S.Ct. 71, 72, 56 L.Ed. 128 (1911).

The current Bankruptcy Code eliminated that immunity. Since a debtor's bankruptcy testimony can be used in criminal proceedings, a debtor may invoke the fifth amendment privilege against self-incrimination in a bankruptcy proceeding unless granted immunity. *See,* 11 U.S.C. § 344.

## III. *Waiver by the Debtor of the Fifth Amendment Privilege*

■ The trustee asserts that the debtor "waived" her fifth amendment privilege against self-incrimination by testimony given at the § 341 meeting of creditors. The court disagrees with the trustee's assertion and holds that the debtor did not waive her right by testifying at the § 341 meeting. Although the fifth amendment's privilege against self-incrimination may be waived by a witness' prior statements, a waiver will not be lightly inferred. *Klein v. Harris,* 667 F.2d 274, 287 (2d Cir.1981), *citing, Smith v. United States,* 337 U.S. 137, 150, 69 S.Ct. 1000, 1007, 93 L.Ed. 1264 (1949). Courts indulge every reasonable presumption against finding a testimonial waiver. *Klein,* 667 F.2d at 287, *citing, Emspak v. United States,* 349 U.S. 190, 198, 75 S.Ct. 687, 692, 99 L.Ed. 997 (1955), and *United States v. O'Henry's Filmworks, Inc.,* 598 F.2d 313, 318–19 (2d Cir.1979).

■ A court should only infer a waiver of the fifth amendment's privilege against self-incrimination from the debtor's prior statements at the § 341 meeting if (1) the debtor's prior statements have created a significant likelihood that the finder of fact will be left with and prone to reply on a distorted view of the truth, and (2) the debtor had reason to know that her prior statements would be interpreted as a waiv-

er of the privilege. *Klein,* 667 F.2d at 287; *accord, United States v. Singer,* 785 F.2d 228, 241 (8th Cir.1986).

The first prong of the test, the distortion principle, should only be inferred in the most compelling circumstances. *Klein,* 667 F.2d at 288. Compelling circumstances do not exist unless a failure to find a waiver would unduly prejudice the trustee. *Id.*

Additionally, a waiver of the privilege in a proceeding does not affect the debtor's rights to assert the privilege in another proceeding. *See, e.g. United States v. James,* 609 F.2d 36, 45 (2d Cir.1979), *cert. denied,* 445 U.S. 905, 100 S.Ct. 1082, 63 L.Ed.2d 321 (1980). The jurisdictional statutes promulgated by Congress creating bankruptcy jurisdiction make a distinction between the terms "case" and "proceeding." *See, e.g.,* 28 U.S.C. § 157. Many proceedings may be brought within a single bankruptcy case. The trustee states in his motion that inquiry needs to be made at a 2004 examination to determine whether fraudulent transfers or preferential transfers have been made. An avoidance action would have to be brought as a separate adversary proceeding. A separate adversary proceeding would relate to but would not necessarily be the same "proceeding" as the § 341 meeting governing the administration of the case. Consequently, the waiver concept may not apply in serial proceedings in a bankruptcy case.

Assuming, however, that the § 341 meeting constitutes part of the same "proceeding" as the 2004 examination within the meaning of the case law interpreting waiver, the debtor may still "refuse to answer any questions about a matter already discussed, even if the facts already revealed are incriminating, as long as the answers may tend to further incriminate [the debtor]." *In re Master Key Litigation,* 507 F.2d 292, 294 (9th Cir.1974). The possibility of further incrimination exists in this case. Debtor's counsel explained that the debtor's sworn testimony at the § 341

meeting of creditors triggered the criminal investigation. Now the trustee seeks to explore in greater detail facts stated by the debtor at the § 341 meeting of creditors. That information, if elicited from the debtor, may tend to further incriminate the debtor by helping the government pinpoint more fruitful areas of inquiry. *See, Ballantyne v. United States,* 237 F.2d 657, 664–65 (5th Cir.1956) (reviewing prior statements of witness to IRS agents and grand jury to conclude that answering further grand jury questions would incriminate witness).

The second prong of the test for waiver, the reason to know principle, like the first prong, should only be inferred in the most compelling circumstances. *Klein,* 667 F.2d at 288. The requisite reason to know that a waiver may be inferred should be found only if, among others, the statements made were "incriminating" (meaning that they did not merely deal with matters "collateral" to the events surrounding commission of the crime, but directly inculpated the debtor on the charges at issue). *Klein,* 667 F.2d at 288 (citing cases). A response to a question "tends to incriminate" if it might provide a clue leading investigators to discover facts that could constitute links in a chain of circumstantial evidence proving the invoker's criminal conduct. *Hoffman,* 341 U.S. at 486, 71 S.Ct. at 818. Although finding any responses to be free of an incriminating potential under this standard may be difficult, the court is left to speculate about the potential crimes committed by the debtor, possible investigatory paths and the possible inferences created. The court finds the evidence presented by the trustee at the hearing to be insufficient to show that the responses given by the debtor at the § 341 meeting were "incriminating." [1]

The debtor, questioned by her attorney at the meeting of creditors, did not make a considered choice and therefore did not have "reason to know" that the privilege against self-incrimination might be waived.

---

1. Of course, if the debtor asserts the fifth amendment privilege and refuses to answer specific questions, the court would require the debtor to show the incriminating potential of her responses. *Hoffman,* 341 U.S. at 486–87, 71 S.Ct. at 818–19.

Approximately twenty-four of the twenty-six transcribed pages of the debtor's testimony at the § 341 meeting were elicited by the debtor's attorney. Courts expect and encourage debtors to be represented by attorneys. If a debtor stands in open court and knowingly and intelligently forfeits rights and privileges, a court may hold the debtor responsible for the consequences. But if the complexity of the law forces a person to speak through an attorney, the ability of the attorney to waive the rights of the person should be extremely limited. Here, the debtor could not have expected that responding to her own lawyer's questions would amount to a waiver of her fifth amendment privilege. *See, Fay v. Noia*, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963) (the Supreme Court held that the considered choice of the defendant was necessary to effect a waiver of the right to seek habeas corpus relief).

The court does not find that the debtor had reason to know, when testifying at the § 341 meeting, that she might thereby be found to have waived her fifth amendment privilege. The court also finds no compelling circumstances supporting a waiver.

### IV. *Debtor's Invocation of the Fifth Amendment*

■ The trustee also asserts that the debtor improperly invoked the fifth amendment privilege by her refusal to take the oath and respond to any questions propounded by the trustee. The trustee is correct. A criminal defendant has a right not to take the witness stand at a criminal trial. The government can not ask a criminal defendant to do so. *See, e.g., United States v. Sardelli*, 813 F.2d 654 (5th Cir. 1987) (the court held that it was impermissible to make inferences from the fact that the defendant had not taken the stand). In any other situation, the privilege does not permit a person to avoid being sworn as a witness or being asked questions. Rather the person must listen to the questions and specifically invoke the privilege rather than answer the questions. *Securities and Exchange Commission v. First Financial Group of Texas*, 659 F.2d 660, 668 (5th Cir.1981), *citing, United States v. Round-*

*tree*, 420 F.2d 845, 852 (5th Cir.1969), and *United States v. Malnik*, 489 F.2d 682, 685 (5th Cir.1974).

■ The debtor should be required to object with specificity to the information sought to permit the court to rule on the validity of the claim of privilege. *Securities and Exchange Commission*, 659 F.2d at 668. The court will consider whether the debtor may invoke the privilege after conducting a particularized inquiry, deciding, in connection with each specific area that the questioning party seeks to explore whether or not the privilege is well founded. *Securities and Exchange Commission*, 659 F.2d at 668; *citing, United States v. Melchor Moreno*, 536 F.2d 1042, 1049 (5th Cir.1976); *accord, In re Connelly*, 59 B.R. 421 (Bankr.N.D.Ill.1986). Debtor's counsel argues that merely being sworn at a 2004 examination given the criminal investigation following the § 341 meeting is incriminating. The court is not persuaded that, because of the threat of incrimination of any relevant question, the debtor is totally excused from responding to relevant inquiries. *See, United States v. Gomez–Rojas*, 507 F.2d 1213, 1220 (5th Cir. 1975). The debtor is entitled to invoke the privilege only to genuinely threatening questions and therefore, is required to take the oath and listen to each question propounded by the trustee.

### V. *Motion for Contempt and Sanctions*

■ The trustee has moved the court to hold the debtor in contempt. The court has the power, under 11 U.S.C. § 105 and Bankruptcy Rule 9020, to hear and determine a request for contempt emanating from the violation of one of its orders in a core proceeding. *See, Kellogg v. Chester*, 71 B.R. 36 (N.D.Tex.1987); *Griffith v. Oles (In re Hipp, Inc.)*, slip op. No. 287–2084, (N.D.Tex.–Amarillo, August 26, 1988). However, the court is mindful of the conflict in the case law outside this district over the bankruptcy court's contempt power. *See, e.g., In re Sequoia Auto Brokers, Ltd., Inc.*, 827 F.2d 1281 (9th Cir.1987);

*compare, Matter of Miller*, 81 B.R. 669 (Bankr.M.D.Fla.1988).[2]

■ A contempt citation should not be taken lightly. *In re Smith and Son Septic and Sanitation Services*, 88 B.R. 375, 379 (Bankr.D.Utah 1988). Contempt constitutes a serious sanction that should only be exercised in the most egregious of circumstances and primarily for the purposes of controlling cases and proceedings and the behavior of the parties before the court. *Id.*

Bankruptcy Rule 9020 provides the framework for the determination of contempt by a bankruptcy judge. The rule provides that the court may determine the existence of contempt only after notice and hearing. The rule further provides that the notice shall be in writing, shall state the essential facts constituting the contempt charged, describe the contempt as criminal or civil, and state the time and place for hearing, allowing a reasonable time for preparation of the defense. *See,* Bankr. Rule 9020.

The motion filed by the trustee fails to describe the contempt as civil or criminal. Furthermore, the order issued by the court was based on the motion for the 2004 examination, which was agreed to by the attorney then representing the debtor. Apparently, the criminal attorney representing the debtor would have objected to the examination and the court would have had a contested hearing to determine the appropriateness of the order. The court determines that the debtor's conduct does not constitute contempt in the circumstances of this case.

The court may, nevertheless, impose sanctions for conduct that does not warrant or amount to contempt. *See, Budget Service Co. v. Better Homes of Virginia, Inc.*, 804 F.2d 289 (4th Cir.1986); *In re Arkansas Communities, Inc.*, 827 F.2d 1219 (8th Cir.1987); *Gonzales v. Parks*, 830 F.2d 1033, 1036 n. 7 (9th Cir.1987). The court

does find that certain sanctions are appropriate where orders of the court have to be subsequently enforced. All orders, even agreed orders, must carry authority to allow this court to efficiently and effectively administer cases. The trustee incurred expenses of attending a fruitless 2004 examination and prosecuting this motion. Unless the debtor is sanctioned for putting the trustee to this expense, the debtor's creditors will bear the expense. Although the trustee may incur expenses if the debtor properly invokes her privilege, she has yet to do so. Evidence establishes the trustee's fees and expenses to be $1,350.00 Therefore, the court will award the trustee $1,350.00 for fees and expenses incurred in connection with the prosecution of this motion and for preparation and attendance at the previously held 2004 examination.

### VI. *Orders*

For the foregoing reasons,

IT IS ORDERED that the debtor be compelled to appear and submit to a 2004 examination by the trustee within ten days of entry of this order;

IT IS FURTHER ORDERED that the debtor is compelled to take the oath and listen to each and every question propounded by the trustee at the 2004 examination before invoking the fifth amendment privilege by refusing to answer specific questions;

IT IS FURTHER ORDERED that the debtor pay the trustee $1,350.00 for fees and expenses incurred in connection with enforcement of an order entered by the court and for attendance at the previously held 2004 examination;

IT IS FURTHER ORDERED that the trustee's motion for contempt is DENIED.

---

**2.** Courts have also disagreed about the constitutional ability of untenured judges to exercise this power. *See, e.g., In re Omega Equipment Corp.*, 51 B.R. 569 (D.D.C.1985) (non-Article III judge cannot make contempt order); *Better*

*Homes of Virginia v. Budget Service Co.*, 52 B.R. 426 (E.D.Va.1985) (bankruptcy judge may make a civil but not criminal contempt order), *aff'd on other grounds*, 804 F.2d 289 (4th Cir.1986).